UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SANDRA L. WENIG, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MESSERLI & KRAMER P.A.,<br><br>Defendant. | Case No. 11-CV-3547 (PJS/FLN)<br><br><br><br>ORDER |

Michael S. Hilicki, THE CONSUMER ADVOCACY CENTER, P.C.; Michael G. Phillips, PHILLIPS LAW, PLLC, for plaintiff.

Christopher R. Morris, BASSFORD REMELE, P.A.; Jennifer Zwilling, MESSERLI & KRAMER, P.A., for defendant.

Plaintiff Sandra Wenig failed to pay a debt that she owed to Capital One Bank (USA), N.A. ("Capital One").  Defendant Messerli & Kramer, P.A. ("Messerli") was retained to collect the debt.  In the course of attempting to collect the debt, Messerli sent three collection letters to Wenig.  Messerli sent substantially identical letters to thousands of other consumers in Minnesota.  Wenig brings this putative class action, alleging that the first and third of Messerli's form letters violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

This matter is before the Court on three motions: Wenig's motion for class certification, Wenig's motion for partial summary judgment on liability, and Messerli's motion for summary judgment.  For the reasons stated below, Wenig's motion for partial summary judgment is

granted, Messerli's motion for summary judgment is denied, and Wenig's motion for class certification is denied.[1]

## I. SUMMARY JUDGMENT

Wenig contends that Messerli's first collection letter failed to contain all of the information required by 15 U.S.C. § 1692g(a) (Count II) and that Messerli's third collection letter "overshadow[ed]" the disclosure of her rights in the first letter in violation of 15 U.S.C. § 1692g(b) (Count I).  The Court addresses these claims in reverse order.

### A. *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. *Count II*

In Count II of her complaint, Wenig alleges that Messerli's first collection letter failed to provide complete notice of Wenig's rights under 15 U.S.C. § 1692g(a).  The Court agrees.

---

[1] Wenig objected to having her motions considered together in light of the risk that the Court would grant summary judgment to her and then be precluded from granting class certification due to concerns about "one-way intervention." *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 558 (8th Cir. 1982).  Had the Court decided to certify a class, the Court would have issued a separate class-certification order before granting Wenig's summary-judgment motion.

Section 1692g(a) requires a debt collector to communicate the following information to the consumer in writing either in the first communication with the consumer or within five days thereafter:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing *within the thirty-day period* that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5) (emphasis added).

The parties dispute whether Messerli's first collection letter contained the information required by § 1692g(a)(4) — specifically, whether the letter informed Wenig that, if she wanted Messerli to provide verification of the debt, she had to dispute the debt in writing "within the thirty-day period."

Messerli's first letter to Wenig, dated September 28, 2011, stated in relevant part:

> [1] Unless you notify us within 30 days after the receipt of this letter that the validity of this debt, or any portion of it, is disputed, we will assume that the debt is valid.  [2] If you dispute the debt in writing, we will obtain verification of the debt and mail it to you.  [3] Also, upon your written request within 30 days, we will

>    provide you with the name and address of the original creditor if
>    different from the current creditor.

Compl. Ex. 1 (bracketed numbers inserted by the Court).

Obviously, the first of these sentences disclosed the information required by subsection (a)(3), the second sentence attempted to disclose the information required by subsection (a)(4), and the third sentence disclosed the information required by subsection (a)(5). The problem with the second sentence was that, although it notified Wenig that "[i]f you dispute the debt in writing, we will obtain verification of the debt and mail it to you," it failed to tell Wenig that she had to exercise that right within the 30-day time period.

In determining whether a debt-collection letter violates the FDCPA, the letter must be read through the eyes of a reasonable but unsophisticated consumer. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317-18 (8th Cir. 2004). Messerli contends that, read as a whole, the letter adequately informs the consumer that she must dispute the debt in writing within 30 days in order to obtain verification of the debt. The subsection (a)(4) sentence comes immediately after the subsection (a)(3) sentence, which notifies the consumer that she must dispute the debt within 30 days. The only logical conclusion, says Messerli, is that the "dispute" mentioned in the subsection (a)(4) sentence is the same as the "dispute" mentioned in the subsection (a)(3) sentence and is therefore subject to the same 30-day time limitation.

But there are important differences between the two sentences — differences that could easily cause the letter to mislead an unsophisticated consumer. Each of the sentences addresses different rights. The subsection (a)(3) sentence concerns the consumer's right to *dispute* the debt, and the debt collector's right to assume that the debt is valid if the consumer fails to do so. The subsection (a)(4) sentence, by contrast, concerns the consumer's right to *obtain verification*

of the debt from the debt collector.  Moreover, these rights are exercised in different ways.  A consumer exercising her rights under subsection (a)(3) must dispute the validity of the debt within thirty days, but she does not have to dispute the debt in writing.[2]  By contrast, a consumer exercising her rights under subsection (a)(4) must dispute the debt in writing within the 30-day period.

      Because of these differences, a reasonable consumer — even a relatively sophisticated consumer — could easily read Messerli's first collection letter and conclude that, although the debt collector has the right to assume that the debt is valid if the consumer does not dispute it in any manner within 30 days, the consumer nevertheless has an unlimited amount of time in which to obtain written verification of the debt.  This reading is reinforced by the fact that the subsection (a)(4) sentence (which does not mention the 30-day period) is sandwiched between the subsection (a)(3) sentence and the subsection (a)(5) sentence (both of which do mention the 30-day period).  Because the first and third sentences contain explicit references to the same 30-day period, it would be reasonable to assume that the second sentence's failure to mention the 30-day period was intentional.

---

[2]The Court notes that, although nothing on the face of § 1692g(a)(3) imposes a writing requirement, there is a split of authority concerning whether § 1692g(a)(3) requires the consumer to dispute the debt in writing.  *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1609-10 (2010) (noting, but not resolving, the split in authority).  It seems to the Court that, under the plain language of the statute, § 1692g(a)(3) does not require the consumer to dispute the debt in writing.  The Court need not resolve this issue, however, because whether § 1692g(a)(3) imposes a writing requirement is not at issue in this case.  Instead, the issue is whether an unsophisticated consumer could understand Messerli's first collection letter to describe a right that consumers indisputably do *not* have — namely, an unlimited amount of time in which to obtain verification of the debt under § 1692g(a)(4).

Messerli cites several cases to support its argument to the contrary, but those cases provide little help to Messerli.  For example, in *Vitullo v. Mancini*, the letter at issue contained the information required by § 1692g(a)(3)-(5), including the 30-day limitation with respect to each subsection; the court rejected the plaintiff's argument that, because only the subsection (a)(3) sentence indicated that the 30-day period started on receipt of the letter, it was unclear when the 30-day period started for purposes of subsections (a)(4) and (a)(5).  684 F. Supp. 2d 747, 757 (E.D. Va. 2010).  Likewise, in *Shapiro v. Riddle & Associates, P.C.*, the plaintiff did not take issue with the completeness of the disclosures required by § 1692g(a); instead, he argued that those disclosures were overshadowed by other information in the letter. 240 F. Supp. 2d 287, 290-91 (S.D.N.Y. 2003).

The Court therefore concludes that Messerli's first collection letter failed to include the information required by § 1692g(a)(4).  Wenig's motion for summary judgment as to liability on Count II is granted, and Messerli's motion for summary judgment on Count II is denied.

### C.  Count I

In Count I of her complaint, Wenig claims that Messerli's third collection letter "overshadow[ed]" the disclosure of her rights in Messerli's first collection letter. Section 1692g(b) states that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

Messerli's third collection letter — dated October 24, 2011 and entitled "FINAL NOTICE" — stated in relevant part:

> You have failed to make a satisfactory arrangement to resolve this obligation voluntarily. We have now given you an opportunity to resolve this matter.
>
> Your failure to respond may result in the enforcement of our client's rights and your contractual agreement in court. You can make our client's decision to commence suit over this debt unnecessary by contacting us to resolve this account.
>
> We are still willing to work with you. However, you must call our office at 877 577-5601 immediately if you want to resolve this matter voluntarily. If you do not contact us, we will assume that you are refusing to make arrangements acceptable to our client and will proceed accordingly.

Compl. Ex. 3. Wenig contends that this letter communicated that her validation rights had expired, even though, because she received this letter less than 30 days after she received the first letter, her validation rights had not, in fact, expired.[3]

Several other judges in this District have denied motions to dismiss overshadowing claims that arose out of the same set of Messerli form letters and that were premised on the same argument. *See Read v. Messerli & Kramer, P.A.*, No. 11-3729 (JNE/FLN), 2012 WL 1439046, at *3 (D. Minn. Apr. 26, 2012); *Poladian v. Messerli & Kramer, P.A.*, No. 12-0291 (DSD/FLN), slip. op. at 4 [ECF No. 11] (D. Minn. Apr. 25, 2012); *Barrett v. Messerli & Kramer, P.A.*, No. 11-2722 (PAM/AJB), slip op. at 4-5 [ECF No. 24] (D. Minn. Apr. 12, 2012); *Riess v.*

---

[3]Wenig's complaint actually alleges that Messerli's third collection letter overshadowed Messerli's first collection letter because the third letter was "*sent* . . . less than thirty days after the first letter . . . ." Comp. ¶ 17 (emphasis added). As discussed below, however, the third letter could not have overshadowed the first letter unless Wenig *received* the third letter within 30 days after receiving the first letter. But Messerli does not dispute that Wenig received its third letter during the 30-day period, and all of the evidence in the record supports this concession.

*Messerli & Kramer, P.A.*, No. 11-2307 (RHK/JJK), 2011 WL 5506290, at *3-4 (D. Minn. Nov. 10, 2011). The Court entirely agrees with Judge Ericksen's analysis of those letters:

> [U]nlike the letters at issue in the cases cited by M & K, the December 12 letter did more than merely demand contact. It did more than even demand "immediate" contact. It also stated that M & K had "given [Read] an opportunity to resolve this matter" and that Read "failed to make a satisfactory arrangement to resolve this obligation voluntarily." The letter continued, stating that Read's "failure to respond may result in the enforcement of our client's rights and your contractual agreement in court." If Read did not call M & K "immediately," then M & K would "assume that [Read is] refusing to make arrangements acceptable to our client and will proceed accordingly." . . . An unsophisticated consumer could read this letter and believe that whatever "opportunity" M & K previously gave him has now expired and that legal action is imminent. Absent any clarifying language, the unsophisticated consumer could also infer that the "opportunity" referred to in the letter was his opportunity to dispute the debt, even though the letter was sent only twenty-six days after the initial communication — before the thirty-day validation period had expired.

*Read*, 2012 WL 1439046, at *3 (footnote omitted).

It is true, as Messerli points out, that *Read* and similar cases merely denied motions to dismiss the overshadowing claim, and did not grant summary judgment to the plaintiff on that claim. But none of the plaintiffs in those cases moved for summary judgment; instead, each simply opposed Messerli's motion to dismiss. In this case, Wenig has moved for summary judgment, the parties have presented no additional relevant facts that could bear on the question of whether the third letter overshadowed the first letter, and neither side contends that there are any factual issues for trial.[4] The Court therefore holds, as a matter of law, that Messerli's third

---

[4]Messerli argues that Wenig herself was not misled by the letter. Even if this is true (which is far from clear), Wenig's subjective understanding of the letter is not relevant. *See McCafferty v. Schwartzkopf Law Office*, No. 10-1401, 2011 WL 4916382, at *3 (E.D.

(continued...)

collection letter violated § 1692g(b) by overshadowing the § 1692g(a) disclosures made in Messerli's first collection letter. Wenig's motion for summary judgment as to liability on Count I is granted, and Messerli's motion for summary judgment on Count I is denied.

## II. CLASS CERTIFICATION

For a class to be certified, plaintiffs must meet all of the criteria of Rule 23(a) and fall within one of the categories of Rule 23(b). Plaintiffs bear the burden of showing that the class should be certified and that the requirements of Rule 23 are met. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). District courts have wide discretion in determining whether to certify a class. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980). But district courts must exercise that discretion within the standards set by Rule 23, which requires a "rigorous analysis" to ensure that class certification is appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Wenig seeks to certify a class under Rule 23(b)(3), which provides that a class action may be maintained if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

---

[4](...continued)
Mo. Oct. 17, 2011) (refusing to take plaintiffs' subjective lack of confusion into account).

>       (B) the extent and nature of any litigation
>       concerning the controversy already begun by or
>       against class members;
>
>       (C) the desirability or undesirability of
>       concentrating the litigation of the claims in the
>       particular forum; and
>
>       (D) the likely difficulties in managing a class
>       action.

Wenig's proposed class is defined as follows:

> [A]ll persons who, according to [Messerli's] records, are consumers with Minnesota addresses in Hennepin County to which [Messerli] sent the first and third collection letters described in the complaint within a 30 day period to collect on a debt allegedly owed Capital One Bank (USA), N.A. from December 8, 2010 to December 7, 2011 (excluding any person who meets this definition who already filed suit alleging one or both of the claims Wenig alleged).

Pl.'s Mot. Class Cert. [ECF No. 30].

The limitations in this proposed class make little sense; it would be as logical to limit the class to Minnesota consumers whose last names start with "R" or to Minnesota consumers who own cats. Messerli has sent materially identical collection letters to about 30,000 consumers in Minnesota, ECF No. 57 at 18, and those consumers owed debts to a variety of creditors, *see, e.g.*, *Poladian v. Messerli & Kramer, P.A.*, No. 12-0291 (DSD/FLN) (D. Minn. filed Feb. 3, 2012) (consumer owed a debt to Barclays Bank Delaware); *Barrett v. Messerli & Kramer, P.A.*, No. 11-2722 (PAM/AJB) (D. Minn. filed Sept. 22, 2011) (consumers owed debts to Affinity Plus Federal Credit Union and Chase Bank USA, N.A.). There is nothing special about consumers living in Hennepin County or consumers who owed a debt to Capital One. All of the consumers who received Messerli's third letter within 30 days of receiving Messerli's first letter suffered

exactly the same overshadowing violation. Thus, the most natural class would include all Minnesota consumers who received Messerli's third letter within 30 days of receiving Messerli's first letter. And, in fact, that is essentially the class that Wenig herself proposed in her complaint. *See* Compl. ¶ 24.

The reason for Wenig's later "gerrymandering" of the class definition may be found in 15 U.S.C. § 1692k(a)(2)(B), which limits class recovery to the lesser of $500,000 or one percent of the defendant's net worth. The parties dispute how to calculate Messerli's net worth, but Wenig alleges that Messerli's net worth is approximately $3 million. Thus, if the most natural class was certified — a class of about 30,000 consumers — Messerli would pay a total of only about $30,000, and each consumer would recover only about $1. By turning one natural class into numerous unnatural classes, Wenig's attorneys are attempting to evade the damages cap in § 1692k(a)(2)(B), force Messerli to pay more than the FDCPA envisions, and increase the amount of each consumer's recovery.

Discovery has revealed that there are between 1,000 and 2,000 consumers who live in Hennepin County, who owed a debt to Capital One, and who may have received Messerli's third letter within 30 days of receiving Messerli's first letter. Wenig believes the number to be about 1,900. Phillips Class Cert. Decl., Sept. 4, 2012 [ECF No. 32] Ex. 5; Weber Dep. 61; ECF No. 57 at 13. Thus, each member of the gerrymandered class would be entitled to recover about $15 — and, of course, Wenig's attorneys would be free to bring an unlimited number of future class actions by simply changing the identity of the county or the creditor.

To certify a class under Rule 23(b)(3), the Court must find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The

"controversy" here involves at least 30,000 Minnesotans who may have received Messerli's third letter within 30 days of receiving Messerli's first letter. Plainly, a class action that resolves only a fraction of the possible claims — based on the fortuity of the county of residence and identity of the creditor — is neither a "fair[]" nor "efficient[]" way to "adjudicat[e] the controversy." Fed. R. Civ. P. 23(b)(3).

This is not to say that a proposed class must always include all possible class members. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 342-44 (7th Cir. 1997) (district court erred in holding that § 1692k(a)(2)(B) implicitly requires a nationwide class and bars serial class action suits). But the highly artificial limitations that Wenig proposes in this case deprive the class-action device of much of its utility. The Court is hard-pressed to discern the benefit to anyone — the Court, the public, Messerli, or potential class members — of adjudicating only the claims of Minnesota consumers who happen to reside in one particular county and who happen to owe money to one particular creditor.

Obviously, Wenig has gerrymandered the proposed class to evade the legislative cap on class damages found in § 1692k(a)(2)(B) and thereby increase each class member's potential recovery. But even after slicing and dicing the class to a fraction of its natural size, Wenig has managed to increase the potential recovery from about $1 per member to only about $15 per member. This is just a tiny sliver of what each class member could recover in an individual suit. *Cf. Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 265 (D. Minn. 2001) (describing a class recovery of $25 per member as "shockingly low when compared to the statutory damages of up to $1,000 that each class member may be eligible to receive in an individual suit"). And it is worth noting that at least four other plaintiffs have brought claims

similar to Wenig's, which suggests that other consumers who received Messerli's letters and have an interest in pursuing their FDCPA rights have been able to do so. (This is not surprising, given that a successful plaintiff can recover not only damages, but attorney's fees.) The Court is reluctant to limit the rights of some potential plaintiffs (who, for all intents and purposes, may as well have been chosen at random) in return for little, if any, corresponding benefit to the efficient resolution of potential claims.

The Court also notes that there is an individualized issue that mitigates against class certification of the overshadowing claim. Purely as a matter of logic, Messerli's third letter cannot have overshadowed Messerli's first letter unless the consumer *received* the third letter within 30 days of when the consumer *received* the first letter. *See Atwood v. Johnson, Rodenburg & Lauinger, PLLP*, No. 10-3837 (DSD/JJK), 2011 WL 3274084, at *2-3 (D. Minn. Aug. 1, 2011). If, say, the first letter had been received on May 1, 2012, and the third letter was not delivered until June 4, 2012, then the third letter could not possibly have overshadowed the first letter. As Wenig herself explains, the third letter overshadows the first letter when it "leaves the unsophisticated consumer in the position of wondering whether the opportunity to exercise their right to dispute the debt has expired." ECF No. 31 at 3. If the 30-day period has already expired, however, the third letter cannot possibly create such uncertainty.

Wenig contends that *Mattson v. U.S. West Communications, Inc.*, 967 F.2d 259 (8th Cir. 1992) is to the contrary. In *Mattson*, the Eighth Circuit held that, for purposes of the statute of limitations, an FDCPA claim based on a letter accrues at the time the letter is mailed rather than when it is received. *Id.* at 261. In *Mattson*, however, the consumer alleged a violation of 15 U.S.C. § 1692e, which prohibits false, deceptive, and misleading representations in connection

with the collection of a debt. *Mattson*, 967 F.2d at 260. In other words, in *Mattson* it was the *content* of the letter, in and of itself, that was alleged to violate the statute.

By contrast, here the content of the third letter does not, in and of itself, violate the FDCPA. Rather, whether the third letter violates the FDCPA depends entirely on its *timing* — that is, on when it is received by the debtor.[5] As Judge Doty pointed out in *Atwood*, the consumer's 30-day validation period does not begin to run until she receives the first letter. *See* 15 U.S.C. § 1692g(a)(3) (consumer has a right to dispute the debt "within thirty days after receipt of the notice"); *Atwood*, 2011 WL 3274084, at *2. And, again, the third letter cannot overshadow the first letter unless it is received by the consumer within that 30-day period. Thus, to know whether a particular consumer has a viable overshadowing claim against Messerli, the Court would have to determine both when the consumer received the first letter and when the consumer received the third letter — both individualized issues.

For these reasons, the Court denies Wenig's motion for class certification.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for class certification [ECF No. 30] is DENIED.

2. Defendant's motion for summary judgment [ECF No. 37] is DENIED.

---

[5]Notably, *Mattson* was decided long before § 1692g was amended to prohibit overshadowing, so *Mattson* had no occasion to consider how its holding might affect an overshadowing claim. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (describing legislative history of "overshadowing" provision).

3. Plaintiff's motion for partial summary judgment on liability [ECF No. 42] is

    GRANTED.

Dated:  March 21, 2013                                  s/Patrick J. Schiltz
                                                        Patrick J. Schiltz
                                                        United States District Judge